## Staunton.

### OLIVER FANT V. LUCY E. THOMAS, ET ALS.

#### September 22, 1921.

1. AGENCY—*Authority of Agent to Accept Overdue Interest—Case at Bar.*—In the instant case the weight of the evidence was clearly to the effect that the payee of a note secured by a trust deed accepted the offer of the president of a bank to collect overdue interest upon the note, and that the same was collected and put to her credit in conformity with this understanding.

   *Held:* That notwithstanding that the payee might afterwards have determined not to accept the overdue interest, as she did not advise the officials of the bank of her change of attitude, the transaction was completed when the interest was collected and put to her credit.

2. WAIVER—*Effect of Waiver—Notice of Intention.*—Where a party to a contract waives a default in its terms, he cannot again establish his right to proceed strictly thereunder until he has given due notice of his intentions to the other party.

3. INTEREST—*Provision in Contract as to Acceleration of Payment—Penalties and Forfeitures.*—A provision in a contract, e. g., a note secured by a deed of trust, providing that in a specified event, e. g., failure to pay interest when due, the time for the payment of a certain sum shall be accelerated does not create a penalty or forfeiture against which a court of equity will relieve, but the provision for accelerating the time of payment of the whole debt in this manner may, of course, be waived by the creditor, and such waiver may be effected by the bare receipt of past due interest, even though the creditor at the time insists that he waives no rights by this acceptance of interest.

Appeal from a decree of the Circuit Court of Culpeper county. Decree for defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*Edwin H. Gibson,* for the appellant.

*Grimsley & Miller,* for the appellees.

SAUNDERS, J., delivered the opinion of the court.

This case presents a single question for determination.

In October, 1913, Oliver Fant, the appellant, purchased a farm in Culpeper county from George T. Grimsley and wife. Prior to that time, Grimsley and wife had purchased the same farm from Lucy E. Thomas and others, and having received the deed therefor conveyed the same in trust to one Burnett Miller, trustee, to secure two notes of $2,000 and $2,250, respectively, made by George T. Grimsley, payable to and endorsed by Lucinda Grimsley, at the Culpeper National Bank. These notes were for purchase money due on the land aforesaid, and payable five years after date, with interest from date, payable annually. When Fant purchased said land from Grimsley, he assumed the payment of these notes. · The deed of trust made by Grimsley and wife contained, among other provisions, the following stipulation:

"Second: If default is made in the payment of any installment of interest on either note herein secured, when due, then that said note will be immediately due and payable, and the trustee can sell under the same conditions as though said note had become due and payable by lapse of time."

Fant did not pay the first annual installment of interest when it fell due on March 8, 1919, but, according to the answer of Mrs. Lucy Thomas, the owner of said notes, the interest was paid and accepted after that date.

From a letter filed by Burnett Miller, trustee, as an ex-

hibit with his answer, it appears that this interest was paid some time after March 14, 1919, the exact date of payment not appearing in the record. The next annual installment of interest became due on March 8, 1920. Fant was again in default in respect of payment, though he had the necessary money to his credit at the bank. He failed, however, to direct the officers of the bank to apply this money to the payment of said interest on the date *supra*. This interest was not paid until March 13, 1920. The circumstances under which this payment was made will be given in detail hereafter.

Some time after March 8, 1920, the precise date not appearing, Mrs. Thomas requested the trustee, Burnett Miller, to sell the Grimsley land on the ground that the first note had become due and payable, by reason of the failure of Fant to pay the interest on the day when the same fell due. Pursuant to this request, the trustee advertised the land for sale on Saturday, June 12, 1920. Thereupon, Fant filed his bill, asking for an injunction forbidding said sale, on the ground that Mrs. Thomas had received the interest due on March 8, 1920, and, therefore, was not entitled to have said land sold. A preliminary injunction was awarded and Mrs. Thomas and the trustee answered the bill. Mrs. Thomas denied that she had ever received the interest due on the date, *ubi supra,* and asserted that when she was informed on March 13, 1920, that the sum of $255, the amount of the interest due, had been placed to her credit at the Culpeper National Bank, she declined to accept same, and so notified Mr. Davies, the president of the bank. Further, that she had never accepted said interest, or any part thereof. Certain affidavits, styled, respectively, "evidence of plaintiff" and "evidence of defendant," were filed by the parties. The affidavits for the plaintiff were the affidavits of John J. Davies, president of the Culpeper National Bank, and R. Weir Waters, cashier of same. The affidavit for the defendant was the affidavit of Mrs. Lucy E. Thomas.

The case came on to be heard in vacation on the pleadings and affidavits, and the court, after stating that "in his opinion, under the trust deed, the principal of the debt secured had become due and payable by reason of the failure to pay the same when due, and the trustee therefore had the right to sell," dissolved the preliminary injunction, and awarded costs against the plaintiff.

The evidence relating to the alleged payment of the interest due on March 8, 1920, is contained in the affidavits of the president and cashier of the Culpeper National Bank, and of the defendant, Mrs. Thomas. The affidavits are conflicting. Mr. Davies states positively that he never received notice from Mrs. Thomas that she would not accept the interest due March 8, 1920, before he received said interest and credited same to her account; that if he had had such notification he would not have accepted payment of the interest from Fant. His account in detail of the entire transaction is as follows: That on or about March 11, Mrs. Thomas was at the bank inquiring whether the interest then due had been paid by Fant; that he told her that Fant had the necessary funds in bank to meet the interest, but had not given instructions to apply said funds to the payment of the same; that he then told her that he would see Fant and have him pay the interest, and that Mrs. Thomas made no objection to this proposition; that, thinking he was acting with Mrs. Thomas' approval, he called Fant's attention to the matter of interest on March 13, and he immediately paid the interest due, and same was credited to Mrs. Thomas' account on that day; that this payment was made out of money then, and for some days past, to Fant's credit at the bank; that he had never been informed by any one, and did not know that Mrs. Thomas had decided not to accept the interest due on March 8, when he received the money from Fant and put same to Mrs. Thomas' credit on March 13, 1920.

The affidavit of Mr. Waters, cashier, is to the effect that he had not given notice to Fant of the day when the interest fell due, and that he had never received notice that Mrs. Thomas would not accept the interest due on March 8, 1920; that Mrs. Thomas was in the bank at various times prior to the 13th day of March, and did not notify him not to accept for her the interest due on the Grimsley notes, which at the time were in the bank for collection, and credit to her account; that so far as he had been able to ascertain, Mrs. Thomas had not notified any of the officials of the bank prior to March 13th not to receive the payment of interest due on March 8th preceding.

The affidavit of Mrs. Thomas is in specific opposition to the foregoing statements. After reciting that the install-ment of interest due on March 8, 1919, was not paid until some time after it was due, and not until Fant was called upon to pay by her counsel, she proceeds to state that she called at the bank on March 9, 1920, and inquired of Mr. Davies whether her interest had been paid, and was told that Fant had been at the bank after the interest was due, but had not paid the same or left any instructions for its payment; that she called at the bank on the 11th, and was told by both Mr. Davies and Mr. Waters that nothing had been paid on account of her interest; that on March 13th, after Mr. Davies had been notified that affiant would not ac-cept interest, but was going to claim that the principal of her debt was due by reason of the failure to pay said in-terest, the sum of $255, the amount of the interest, was placed to her credit at the bank; that she declined to accept this money, and so notified President Davies; that she had never accepted this payment, and did not intend to accept same.

[1] The weight of these affidavits, having in mind that Davies and Waters are disinterested witnesses, is clearly to the effect that Mrs. Thomas accepted Mr. Davies' offer to

collect the overdue interest, and that same was collected and put to her credit in conformity with the understanding between these parties. It may be that after her conversation with Mr. Davies, Mrs. Thomas, upon consultation with others, determined not to accept the overdue interest from Fant, but evidently she did not advise the officials of the bank of that change of attitude. It was while Davies was acting with authority derived from his understanding with Mrs. Thomas that the interest was collected and placed to the latter's credit, thus completing the transaction. What was the legal effect upon Mrs. Thomas' rights of accepting past-due interest from Fant, first in 1919, and second in 1920?

The deed of trust, *supra*, provides that, "If default is made in the payment of any installment of interest on either note herein secured, when due, then that said note will be immediately due and payable, and the trustee can sell under the same conditions as though said note had become due and payable by lapse of time." Undoubtedly, two installments of interest were not paid when due, but were received and receipted for later. This receipt of overdue interest was the voluntary act of the appellee. It was competent for her to stand upon her contract rights, and upon the failure of the debtor to pay his interest as agreed, to cause the land conveyed to be sold according to the terms of the deed of trust. A contract to the effect that where there is default in the payment of interest, even for a day, the time of payment of the debt secured is thereby accelerated, and the *cestui que* trust empowered to enforce the deed of trust securing his debt, is a harsh one, and it would seem that equity would have the right to interfere on the ground that the provision accelerating payment is in the nature of a penalty. Such, indeed, was the former attitude of this court (*Mayo* v. *Judah*, 5 Munf. 495) ; but the present law in Virginia touching contracts of the nature, *supra*, was an-

nounced in the accompanying extract from *Nichels* v. *People's Building, Loan and Savings Association,* 93 Va. 380, 25 S. E. 8: "A provision in a contract, not that the amount of the debt shall be increased, but that in a specified event the time for the payment of a certain sum due shall be accelerated, does not create a penalty, or forfeiture, against which a court of equity will relieve.

The following extract from Pomeroy's Equity Jurisprudence is cited approvingly in the foregoing connection: "It is settled, therefore, by the overwhelming weight of authority, that if a certain sum is due, and secured by a bond, or bond and mortgage, or other form of obligation, and is made payable at some future day specified, with interest thereon made payable during the interval at fixed times annually, or semi-annually, or monthly, and a further stipulation provides that in case default should occur in the prompt payment of any such portion of interest at the time agreed upon, then the entire principal sum of the debt should at once become payable, and payment thereof could be enforced by the creditor, such a stipulation is not in the nature of a penalty, but will be sustained in equity as well as at law." 1 Pom. Eq. Jur., sec. 439.

But the very section of Pomeroy which announces the foregoing doctrine, proceeds to say: "The provision for accelerating the time of payment of the whole debt in this manner may, of course, be waived by the creditor, particularly when it is made to depend upon his election."

In support of this proposition, Pomeroy cites the English case of *Langridge* v. *Payne,* in Johnson & Hemming's Reports, p. 423. This case is singularly in point. The following is from the syllabus of that case: "Agreement in writing not to call in a mortgage for two years, the mortgagor fulfilling his covenants. On one occasion within the two years, interest was not paid on the day, and the mortgagor shortly thereafter gave notice that he was no longer bound

by the agreement, demanded and compelled payment of the interest, and costs of notice." Having thus collected the past-due interest by force of law, the creditor proceeded to enforce his mortgage. The court held that upon the facts stated, *supra,* such collection of the interest was a waiver of default, and an injunction was granted. This creditor not only collected past-due interest, but enforced that collection by resort to the courts, at the same time insisting that he was not bound by the agreement not to call in the mortgage. He stood stoutly upon his rights. Nevertheless, the court ruled that the mere collection of the past-due interest to which he was certainly entitled, operated to "waive the default." There was certainly no actual or apparent intent on the part of the mortgagor to waive his rights, but the court treated his acts as a waiver.

[2] "Where a party to a contract waives a default in its terms, he cannot again establish his right to proceed strictly thereunder until he has given due notice of his intentions to the other party." Elliott on Contracts, sec. 2050.

In the case of *Belloc* v. *Davis,* 38 Cal. 242, it was held that a provision in a note that on default of interest the whole principal should become due, did not cause the statute of limitations to run from that date, but at the expiration of the credit fixed by the note. While the court held in this case that the provision that on default in payment of interest the whole amount of principal and interest should become due and payable, was in the nature of a penalty, it further held that by accepting payment of interest made after the default, the creditor waived all benefit from the default, and thereafter the rights and obligations of both parties continued, without regard to the forfeiture. This case was approved and affirmed in the later case of *Mason* v. *Luce,* 116 Cal. 232, 48 Pac. 72.

[3] It is a fair conclusion that when, in the *Nichels Case, supra,* this court cited Pomeroy as authority for the

proposition, that a provision in· a contract providing that in a specified event the time for the payment of a certain sum shall be accelerated does not create a penalty or forfeiture against which a court of equity will relieve, it approved the companion proposition asserted by Pomeroy in the same section, that the provision "for accelerating the time of payment of the whole debt in this manner may, of course, be waived by the creditor." Pomeroy cites the single case of *Langridge* v. *Payne, supra,* as sufficient authority to show that this waiver may be effected by the bare receipt of past-due interest, even though the creditor at the time insists that he waives no rights by this acceptance.

See also on the subject of waiver by the acts of a party the recent case of *Richmond Leather Co.* v. *Fawcett,* 130 Va. 484, 107 S. E. 800, and cases cited.

In view of the principles announced and authorities cited, it is the conclusion of this court that the decree of the Circuit Court of Culpeper county should be reversed.

*Reversed.*